Harry Halprin, et al. * v. Commissioner. Halprin v. Commissioner
Docket Nos. 172-68 - 174-68.
United States Tax Court
T.C. Memo 1969-266; 1969 Tax Ct. Memo LEXIS 33; 28 T.C.M. (CCH) 1353; T.C.M. (RIA) 69266; December 9, 1969, Filed Harry Graham Balter and J. Howard Sturman, Suite 1134 Travelers Ins. Bldg., 3600 Wilshire Blvd., Los Angeles, Calif., for the petitioners. Allan D. Teplinsky, for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: Respondent determined deficiencies in petitioners' Federal income taxes, as follows: Dkt. No.
Petitioners
Year
Deficiency
172-68
Harry Halprin
1962
$2,243.37
1963
2,399.52
173-68
Rose K. Halprin
1962
2,243.37
1963
2,399.52
174-68
Harry and Rose K. Halprin
1964
$4,517.10
*34 The only issue for decision is whether certain amounts paid by Harry Halprin to his ex-wife, Lottie Halprin, are properly deductible by petitioners. Findings of Fact Some of the facts have been stipulated, and the stipulation of facts, together with 1354 the exhibits attached thereto, is incorporated herein by this reference. Harry Halprin ("Harry") and Rose K. Halprin ("Rose"), husband and wife, were residents of Studio City, California, at the time of filing of the petitions herein. Harry and Rose each filed timely separate individual Federal income tax returns for calendar years 1962 and 1963 and a timely joint Federal income tax return for calendar year 1964 with the district director of internal revenue, Los Angeles, California. Harry and his former wife, Lottie Halprin ("Lottie"), were married on June 25, 1937, in Los Angeles, California. They were separated on October 6, 1959. Harry filed a complaint for divorce on November 14, 1960. Harry and Lottie had two children during their marriage, Judith Carol, born on October 30, 1938, and William Warren, born on August 24, 1942. On June 21, 1961, Harry and Lottie, acting through their respective counsel, reached *35 a settlement agreement as to their divorce action. The agreement was embodied and incorporated into an interlocutory judgment of divorce which was prepared by counsel and presented on the same day to the Superior Court of the State of California in and for the County of Los Angeles for its signature. The interlocutory judgment, in pertinent part, read as follows: IT IS THEREFORE ORDERED, ADJUDGED AND DECREED that in full settlement of all of the property rights of the defendant and cross-complainant that the plaintiff and cross-defendant shall pay to the defendant the sum of One Hundred Eighty Three Thousand Nine Hundred Dollars ($183,900.00) as follows: (a) The sum of Twenty Five Thousand Five Hundred Dollars ($25,500.00) in cash within a period of five (5) days from the date hereof. (b) The balance of One Hundred Fifty Eight Thousand Four Hundred Dollars ($158,400.00) shall be payable at the rate of Eight Hundred Dollars ($800.00) per month without interest commencing on the tenth day of July, 1961 and on the tenth day of each consecutive month thereafter until the total sum of One Hundred Fifty Eight Thousand Four Hundred Dollars ($158,400.00) has been fully paid. (c) Plaintiff *36 will transfer to defendant the ownership of the 1959 Chevrolet Impala automobile now in the possession of defendant. (d) Plaintiff will transfer and quitclaim any and all right, title and interest in and to the household furnishings and bric-a-brac now in the possession of defendant. (e) As security for the payment of the sum of One Hundred Fifty Eight Thousand Four Hundred Dollars ($158,400.00), plaintiff shall endorse on the stock certificates representing a fifty percent (50%) ownership of all issued and outstanding capital stock of the Halprin Supply Co. and Sierra Fire Equipment Company, both California corporations, the following: "This certificate may not be sold or encumbered in any manner until such time as the plaintiff has paid to the defendant the sum of $158,400.00 as provided in the Interlocutory Judgment in that certain action entitled Harry Halprin, Plaintiff and Cross Defendant, vs. Lottie Halprin, Defendant and Cross-Complainant, bearing No. WED 1258, in the Superior Court of the State of California, County of Los Angeles." IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said stock certificates shall be deposited with the Union Bank, Main Office, Eighth and *37 Hill Streets, Los Angeles, California, in the Collection Department, with appropriate instructions to collect said Eight Hundred Dollars ($800.00) a month and to hold said certificates until the total sum of One Hundred Fifty Eight Thousand Four Hundred Dollars ($158,400.00) has been fully paid, the collection expense to be paid by the plaintiff. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiff shall pay to Lowell L. Dryden and Guy E. Ward, in addition to fees heretofore paid, the sum of Five Thousand Dollars ($5,000.00) for attorneys' fees and all costs of suit herein, which sum is to be paid within a period of five (5) days from the date hereof. IT IS FURTHER ORDERED, ADJUDGED AND DECREED that said sum of One Hundred Eighty Three Thousand Nine Hundred Dollars ($183,900.00) is to be paid regardless of the death of either plaintiff or defendant or the remarriage of the defendant. Further, this is intended to be a non-modifiable interlocutory decree and not subject to modification or change by either plaintiff or defendant. Further, in the event of the death of the plaintiff it is acknowledged that any unpaid balance of said sum of One Hundred Eighty Three Thousand Nine *38 Hundred Dollars ($183,900.00) shall be a valid creditors' claim against the estate of the plaintiff. 1355 On June 29, 1962, a final judgment of divorce between Harry and Lottie was granted. Prior to this date, various actions transpired. For instance, on November 23, 1960, Lottie filed an answer to the complaint for divorce which Harry filed on November 14, 1960. In her answer Lottie prayed "[that] the community property belonging to the parties be divided equally between them" and "[that] defendant be awarded a reasonable amount as and for her support and maintenance." On December 19, 1960, Lottie filed an application asking, inter alia, for alimony pendente lite. The result was that on January 5, 1961, the divorce court made an award of $850 per month to Lottie for her support and maintenance. On April 7, 1961, Lottie filed a cross-complaint for divorce. On her cross-complaint, she prayed "[that] she be awarded a reasonable sum as and for her support and maintenance." Lottie further prayed "[that] the community property be equitably divided between the parties in such proportions as to the court may seem reasonable." The interlocutory judgment of divorce recited *39 the following stipulation of the parties: Thereafter upon stipulation of the parties through their respective counsel, it is stipulated that the issue of divorce may be heard as a default and defendant and cross-complainant asks leave to withdraw the Answer and Cross-Complaint, as to the issue of divorce only which motion is granted. Plaintiff offers evidence in support of the Complaint for Divorce on the grounds of extreme cruelty. Cross-complainant offers no evidence. Findings are waived. When the case was ready for trial on June 21, 1961, the issues as to division of property and support had not been settled. The court urged the parties to try to reach an agreement. The attorneys for both parties proceeded to the office of one of the attorneys for Lottie where they reached the settlement later incorporated in the interlocutory judgment. Counsel for both Harry and Lottie participated in the drafting of the settlement agreement. Both counsel had previously handled divorce cases. The final settlement agreement was dictated by and typewritten in the office of one of Lottie's attorneys. There was no fraud, duress, or undue influence exerted upon either Harry or his counsel in obtaining *40 their concurrence to said agreement. During each of the years 1962, 1963, and 1964, Harry paid a total of $9,600 to Lottie in accordance with the interlocutory judgment of divorce. In 1962 and 1963, when Harry and Rose filed individual returns, each deducted $4,800 as alimony. In 1964, when they filed a joint return, they deducted together $9,600. In the statement attached to his notice of deficiency, respondent disallowed such deductions as not representing payments of alimony. Opinion The sole issue before the Court is whether petitioners are entitled to deductions under section 215 [1] for certain payments made to Lottie, Harry's ex-wife. To be deductible under section 215, the payments by petitioners must have been properly includable in Lottie's gross income under section 71. [2] A prerequisite to inclusion under section 71 is that the payments to the wife be made in discharge of a legal obligation which is imposed on or incurred by the husband because of the marital or family relationship. *41 The question of immediate concern is thus whether Harry made the payments because of a marital or family relationship. Stated differently, did Harry's payments constitute alimony? It is respondent's position that the payments were not made because of the marital or family relationship since such payments 1356 were in recognition of a settlement of property rights. Respondent looks to several provisions of the settlement agreement as embodied in the interlocutory judgment of divorce. We conclude that the provisions upon which respondent relies are so preponderating that they are determinative. For instance, one clause provides that the payments therein are "in full settlement of all of the property rights of the defendant and cross-complainant." [3] The agreement does not mention the terms "support," "maintenance," or "alimony." A second clause stated that Harry was required to pay a principal amount to Lottie. Harry obligated himself to pay $25,500 in cash within five days of the interlocutory judgment and the balance of $158,400 in monthly installments of $800 per month. We feel that the fixed sum of Harry's payments was the full measure of value of the community property *42 surrendered by Lottie. See (C.A. 5, 1955). Compare . A third provision stated that the sum of $183,900 was to be paid "regardless of the death of either plaintiff or defendant or the remarriage of the defendant." This provision, too, supports the argument that the payments in question represent a property settlement. If standing alone, this provision would not be determinative; nevertheless, it does buttress respondent's position. See Phinney v. Mauk, - F. 2d - (C.A. 5, 1969). In conjunction with the aforesaid provision, we further note that the agreement does not impose any limitation on Lottie's rights to assign any portion of the lump sum. Compare , *43 in which we observed: It is of material significance in this connection that the wife's right to these payments was "nontransferable and nonassignable" and was put beyond execution and judicial sale, "being intended to provide for the current annual support of Mrs. Marie Willett Hogg." * * * Another provision stated: "Further, this is intended to be a non-modifiable interlocutory decree and not subject to modification or change by either plaintiff or defendant." Such a provision is indicative of a property settlement rather than an award for support. In the case of support agreements, usually the amounts vary depending on the needs of the wife and the fluctuating income of the husband. We also take cognizance of the fact that the community property interests of Lottie were substantial. The parties do not agree as to the value of the community property but on the basis of petitioners' computations the total value was at least $177,000. Thus, Lottie's interest in the community property was no less than $88,500. As this Court has previously said, where the wife does have property and the divorce agreement is referred to as a property settlement, such language is "often regarded *44 as persuasive that payments to the wife represent a property settlement rather than support payments." . Also, see , (on appeal C.A. 7, Aug. 8, 1969), in which we noted at 237: [4]
On the other hand, there is nothing in the agreement connecting the payments provided in paragraph 1(c) [of the agreement] with any property interest held by Dorothy. She did not have a community property interest in any property acquired during the marriage. * * * Petitioners have expended considerable effort to introduce evidence as to the intent of the parties at the time of the settlement agreement. Respondent has strenuously objected to the admissibility of such evidence on grounds of the parol evidence rule and has moved to strike. At the trial, the Court admitted *45 the evidence consisting of the testimony of several persons as well as various exhibits and took under advisement respondent's motion to strike said evidence. Respondent's motion to strike need not be acted upon because, even taking into 1357 consideration the evidence admitted over respondent's objection, our result would not be different. The provisions in the settlement agreement overwhelmingly support respondent's position. Decisions will be entered for the respondent. Footnotes
*. Proceedings of the following petitioners are consolidated herewith: Rose K. Halprin, docket No. 173-68; and Harry Halprin and Rose K. Halprin, docket No. 174-68.↩
1. All references to "section" are to the Internal Revenue Code of 1954. SEC. 215. ALIMONY, ETC., PAYMENTS. (a) General Rule. - In the case of a husband described in section 71, there shall be allowed as a deduction amounts includible under section 71 in the gross income of his wife, payment of which is made within the husband's taxable year. * * * ↩
2. SEC 71. ALIMONY AND SEPARATE MAINTENANCE PAYMENTS. (a) General Rule. - (1) Decree of Divorce or Separate Maintenance. - If a wife is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, the wife's gross income includes periodic payments (whether or not made at regular intervals) received after such decree in discharge of (or attributable to property transferred, in trust or otherwise, in discharge of) a legal obligation which, because of the marital or family relationship, is imposed on or incurred by the husband under the decree or under a written instrument incident to such divorce or separation. The years in issue are closed by the statute of limitations as to Lottie. For that reason, the Commissioner has had to take sides and proceed against Harry rather than remaining in the preferable position of a stakeholder.↩
3. While giving cognizance to such provision, we are not unmindful of what we said in : Whether the payments in fact represent alimony or are in consideration of petitioner's interest in the community property is a question that turns upon the facts, and not upon any labels that may or may not have been placed upon them. * * *↩
4. In , (on appeal C.A. 7, Aug. 8, 1969), petitioner-husband prevailed on the question whether his payments qualified as alimony but he lost on the question as to whether his payments were periodic under section 71(c)(2). Petitioner has appealed our decision in Joslin.↩